NATIONWIDE MUTUAL INSURANCE COMPANY, Nationwide Mutual Fire Insurance Company, Nationwide General Insurance Company, Nationwide Property & Casualty Insurance Company and Colonial Insurance Company of Wisconsin F.K.A. Colonial Insurance Company of California, Appellants

v.

John FLEMING, Joshua Meeder, Meeder Fleming & Associates, Inc., Moraine Group, Inc., Mary Lou Fleming, Andrea Meeder, Robert Dean, John Williams, Barbara Reddick, Ray Kooser, Sandy Kooser, David Colley, Connie Taylor, Michele Daugherty, Lon Mcallister, and Lon McAllister Agency, Appellees.

Superior Court of Pennsylvania.

Argued Sept. 20, 2006.
Filed May 21, 2007.

Lee A. Montgomery, Butler, for Nation-wide, appellant.

Robert O. Lampl, Pittsburgh, for Fleming, appellee.

BEFORE: TODD, BENDER and McCAFFERY, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 Appellants, Nationwide Mutual Insurance Company and related entities (collectively "Nationwide"), appeal from the trial court order requiring production of a document that Nationwide claims is protected from disclosure by attorney-client privilege. Nationwide specifically asks us to determine whether the trial court erred in finding that Nationwide had waived attorney-client privilege with respect to this document via production of two other documents pertaining to the same subject matter. After careful review of the certified record and the applicable law, we conclude that the trial court did indeed err in finding subject matter waiver applicable to the document in question. However, we also conclude that the document is *not* protected by attorney-client privilege. Hence, we affirm, although on grounds different from those on which the trial court based its decision.

¶ 2 The facts and procedural history underlying this appeal are as follows. Nationwide brought an action sounding in breach of contract and intentional interference with contractual relations against Appellees, who are former Nationwide agents and their respective insurance agencies. Specifically, Nationwide alleged that Appellees accessed confidential policyholder information from Nationwide's internal computer system and then provided that information to Nationwide's competitors. In response, Appellees argued that their agreement with Nationwide permitted post-termination competition and that Nationwide did not maintain any proprietary interest in policyholder information. Furthermore, Appellees brought a counterclaim, in which they alleged, *inter alia,*

that Nationwide's claim had been brought in bad faith. A bench trial commenced on January 10, 2005, before the Honorable Thomas J. Doerr.

¶ 3 On the second day of trial, defense counsel questioned Galen Barnes, the president of Nationwide from 1999 until 2003, with respect to several Nationwide documents which had been produced during discovery, including a memorandum labeled "Document No. 529" (hereinafter Document 529). Nationwide had asserted that this document was protected by attorney-client privilege, and therefore had redacted the entire substantive text, although the author, recipient list, date, and subject line of the memorandum were disclosed. Document 529 was written on July 29, 1999, by Tom Dietrich, who was a member of Nationwide's general counsel's office. It was sent to a total of 15 individuals, all of whom appear to have been Nationwide officers, managers, or attorneys. The subject line of Document 529 read "Agent Defections." Appellees moved the court to review the document *in camera* and determine if it had been properly classified as protected under attorney-client privilege. (Notes of Testimony ("N.T."), January 11, 2005, at 87).

¶ 4 At Judge Doerr's request, another judge, the Honorable S. Michael Yeager, conducted a hearing and examined Document 529 *in camera* to determine if it was protected from discovery by attorney-client privilege, as asserted by Nationwide. At the hearing, Appellees argued that, even if Document 529 satisfied the criteria for protection under attorney-client privilege, Nationwide had waived the privilege with respect to this document by voluntarily having disclosed two other privileged documents on the subject of agent defection, specifically, Documents 314 and 395. In other words, in Appellees' view, Nationwide was attempting to use the attorney-

client privilege as "both a sword and a shield" by selectively disclosing privileged documents on the subject of agent defections that were favorable to its position, while withholding as privileged those documents that were unfavorable. (Appellees' Brief at 3). Such selective disclosure is improper and, Appellees argued, should result in Nationwide's waiver of attorney-client privilege for *all* documents dealing with the same subject matter, including Document 529.

¶ 5 In response to Appellees' advancement of a subject matter waiver argument, Nationwide took the position that Documents 314 and 395 were *not* protected from disclosure under attorney-client privilege because they were merely routine business communications devoid of any confidential communications made by Nationwide for the purpose of obtaining legal advice. Therefore, Nationwide argued, disclosure of these documents could *not,* as a matter of law, waive attorney-client privilege with respect to Document 529, even though the subject matter of all the documents was similar.

¶ 6 Judge Yeager did not accept Nationwide's arguments and held that by having voluntarily produced Documents 314 and 395, Nationwide had waived attorney-client privilege with respect to Document 529. More specifically, Judge Yeager determined that Nationwide had improperly attempted to use attorney-client privilege as a sword as well as a shield by disclosing communications on the topic of agent defection that furthered its efforts in the ongoing litigation, while attempting to withhold other documents on the same subject. Therefore, Judge Yeager held, Document 529 was discoverable. (Trial Court Opinion, dated February 16, 2005, at 4).

¶ 7 Nationwide appealed Judge Yeager's ruling to our Court, and also asked the trial court for a stay during the pendency of the appeal. The stay was granted. Ap-

pellees then filed a motion to quash for lack of appellate jurisdiction, which this Court granted on September 19, 2005. Nationwide successfully petitioned for allowance of appeal. Our Supreme Court vacated the quashal and remanded the matter to this Court.

Nationwide now raises the following two issues for our consideration:

I. Whether the lower court erred in concluding that two documents produced by Nationwide to Appellees during discovery were privileged attorney-client communications and, by their production, Nationwide waived the attorney[ ]client privilege as it applies to an undisputedly privileged document.

II. Whether the lower court erred by invoking the subject matter waiver doctrine to compel Nationwide's production to Appellees of an undisputedly privileged document.

(Nationwide's Brief at 4).

## LEGAL PRINCIPLES

■ ¶ 8 Whether attorney-client privilege protects a particular communication from disclosure is a question of law. *In re Estate of Wood,* 818 A.2d 568, 571 (Pa.Super.2003), *appeal denied,* 584 Pa. 696, 882 A.2d 479 (2005). For any question of law our standard of review is *de novo* and our scope is plenary. *Kopko v. Miller,* 586 Pa. 170, 177, 892 A.2d 766, 770 (2006).

■ ¶ 9 The attorney-client privilege has deep historical roots and indeed is the oldest of the privileges for confidential communications in common law. *See Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). It is designed to foster confidence between attorney and client, leading to a trusting, open dialogue. *Slusaw v. Hoffman,* 861 A.2d 269, 273 (Pa.Super.2004); *Estate of Wood, supra* at 571. The privilege derives

from the recognition that full and frank communication between attorney and client is necessary for sound legal advocacy and advice, which serve the broader public interests of "observance of law and administration of justice." *Upjohn Co., supra* at 389, 101 S.Ct. 677.

¶ 10 In Pennsylvania, the attorney-client privilege is codified under the following statute:

**Confidential communications to attorney**

In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S.A. § 5928.

¶ 11 Pursuant to this statute, four elements must be satisfied in order to successfully invoke the protections of attorney-client privilege:

1) The asserted holder of the privilege is or sought to become a client.

2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.

3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

4) The privilege has been claimed and is not waived by the client.

*Commonwealth v. Mrozek,* 441 Pa.Super. 425, 657 A.2d 997, 998 (1995) (citation omitted); *see also Rhone–Poulenc Rorer, Inc. v. Home Indemnity Co.,* 32 F.3d 851, 862 (3d Cir.1994) (reciting the same elements in an application of Pennsylvania law on attorney-client privilege).

¶ 12 In sum, under our statutory and decisional law, attorney-client privilege protects from disclosure *only* those communications *made by a client* to his or her attorney which are confidential and made in connection with the providing of legal services or advice. *Slusaw, supra* at 273; *Estate of Wood, supra* at 571.

¶ 13 The privilege extends to communications *from an attorney* to his or her client *if and only if* the communications fall within the general statutory definition. Under Section 5928, counsel cannot testify as to confidential communications made to him or her by the client, unless the client has waived the privilege. Consistent with this statute, the privilege protects confidential communications from an attorney to his or her client only to the extent that such communications contain and would thus reveal confidential communications from the client. *Slusaw, supra* at 273 (holding that subpoenaed invoices were not protected by attorney-client privilege "to the extent that they do not disclose confidential communications which [the client] disclosed to [his][a]ttorneys" and concluding that any references to such confidential communications could be redacted); *Birth Center v. St. Paul Companies, Inc.,* 727 A.2d 1144, 1164 (Pa.Super.1999), *disapproved of on other grounds in Mishoe v. Erie Insurance Co.,* 573 Pa. 267, 824 A.2d 1153 (2003) (concluding that two letters prepared by a party's counsel concerning the potential for a bad faith claim were not protected under attorney-client privilege because the letters contained no protected communications from the party to its counsel); *see also Coregis Insurance Co. v. Law Offices of Carole F. Kafrissen,* 186 F.Supp.2d 567, 569–72 (E.D.Pa.2002) (reviewing Pennsylvania statutory and case law on attorney-client privilege and concluding that the courts have crafted a corollary to the gen-

eral rule governing communications from client to attorney that "cloaks communications from the attorney to the client with privilege if disclosure of the communication would reveal the communications from the client to the attorney").

■ ¶ 14 Protection under attorney-client privilege is subject to limits, exceptions, and waiver. For example, the crime-fraud exception results in loss of the privilege's protections when the advice of counsel is sought in furtherance of the commission of criminal or fraudulent activity. *In re Investigating Grand Jury of Philadelphia County No. 88–00–3503,* 527 Pa. 432, 441–42, 593 A.2d 402, 406–07 (1991); *Brennan v. Brennan,* 281 Pa.Super. 362, 422 A.2d 510, 515 (1980). Furthermore, the privilege may be forfeited if its exercise will only frustrate the interests of justice. *Brennan, supra* at 515.

■ ¶ 15 The client can waive the protection afforded by attorney-client privilege, for example by disclosing the communication at issue to a third party. *Loutzenhiser v. Doddo,* 436 Pa. 512, 518–19, 260 A.2d 745, 748 (1970); *Joe v. Prison Health Services, Inc.,* 782 A.2d 24, 31 (Pa. Cmwlth.2001). In another, related type of waiver, the federal courts have held that, under some circumstances, voluntary disclosure of a communication protected by attorney-client privilege may result in waiver of the privilege for *all* communications pertaining to the same subject matter ("subject matter waiver"). *Murray v. Gemplus International, S.A.,* 217 F.R.D. 362, 367 (E.D.Pa.2003); *Katz v. AT & T Corp.,* 191 F.R.D. 433, 439 (E.D.Pa.2000); *see also Minatronics Corp. v. Buchanan Ingersoll, P.C.,* 23 Pa. D. & C.4th 1, 10–12 (Allegheny Cty.1995) (Wettick, J.) (applying the principles of subject matter waiver of attorney-client privilege, although find-

ing no Pennsylvania appellate court opinions on the matter).[1] Subject matter waiver of attorney-client privilege is based on considerations of fairness, which preclude a party from disclosing only those privileged materials that support its position, while simultaneously concealing as privileged those materials that are unfavorable to its position. *Katz, supra* at 439. A litigant attempting to use attorney-client privilege as an offensive weapon by selective disclosure of favorable privileged communications has misused the privilege; waiver of the privilege for all communications on the same subject has been deemed the appropriate response to such misuse. *See Murray, supra* at 367 (reiterating that "attorney-client privilege is a shield used to protect [privileged] communications, not a sword wielded to gain advantage in litigation").

■ ¶ 16 Whether attorney-client privilege protects a particular communication from disclosure is a question of law to be decided by the court. *See Estate of Wood,* 818 A.2d at 571. The precept that "no claimant of a testimonial privilege can be the final arbiter of his own claim" applies to a party invoking attorney-client privilege as surely as it applies to those who invoke other evidentiary privileges. *See Commonwealth v. Hess,* 270 Pa.Super. 501, 411 A.2d 830, 833 (1979) (applying precept to spousal privilege).

¶ 17 In case law from our Supreme Court and from this Court, a two-part inquiry has been used to resolve disputes over disclosure of communications for which attorney-client privilege has been asserted. The first part of the inquiry is whether attorney-client privilege does indeed apply to a particular communication. If the court holds that the privilege does

---

1. In *LaValle v. Office of General Counsel of Commonwealth of Pa.,* 564 Pa. 482, 500 n. 16, 769 A.2d 449, 460 n. 15 (2001), our Supreme Court declined to undertake an assessment of subject matter waiver as applied to the work product doctrine.

apply, then the court must engage in the second part of the inquiry: whether an exception or waiver applies, thereby overcoming the privilege and permitting disclosure. *See Investigating Grand Jury of Philadelphia County,* 527 Pa. at 440, 593 A.2d at 406; *Brennan,* 422 A.2d at 517.

¶ 18 For example, in *Investigating Grand Jury of Philadelphia County,* 527 Pa. at 440–43, 593 A.2d at 406–07, our Supreme Court first addressed whether a client's handwritten notes, taken during a meeting with his counsel, fell within the scope of attorney-client privilege. After determining that the notes did indeed fall within the scope of the privilege, the Court went on to determine whether the notes should be disclosed anyway, under the crime-fraud exception to the privilege. At this second stage of the inquiry, it was the Commonwealth's burden to produce *prima facie* evidence that the crime-fraud exception applied, and thus that disclosure was proper despite the privileged nature of the communication. Similarly, in *Brennan,* 422 A.2d at 517, a child custody case, this Court initially addressed whether attorney-client privilege could operate to preclude a court from compelling an attorney to disclose his client's address when the client had specifically requested confidentiality with respect to that information. Based on a review of relevant statutes and case law from this Commonwealth and other jurisdictions, our Court first concluded that, under the circumstances presented, attorney-client privilege was properly invoked to protect the client's address from disclosure. Then, the court went on to determine whether the party seeking the disclosure had *overcome* the privilege by establishing a *prima facie* case that the crime-fraud exception applied or that exercise of the privilege would frustrate the interests of justice.

 ¶ 19 The structure of *Investigating Grand Jury* and *Brennan,* as well as other Pennsylvania decisions, thus imposes a shifting burden of proof in disputes over the disclosure of communications alleged to be protected under attorney-client privilege. The party who has asserted attorney-client privilege must initially set forth facts showing that the privilege has been properly invoked; then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure will not violate the attorney-client privilege, *e.g.,* because the privilege has been waived or because some exception applies. *See also In re Subpoena No. 22,* 709 A.2d 385, 388 (Pa.Super.1998) (applying the principles of attorney-client privilege to psychotherapist-client privilege and concluding that "[o]nce the party asserting a privilege shows that the privilege is properly invoked, the burden shifts to the party seeking the disclosure to show that disclosure of the information will not violate the accorded privilege").

 ¶ 20 The Commonwealth Court has articulated the same principles as to the shifting burdens of proof in an attorney-client privilege inquiry. *See Joyner v. Southeastern Pennsylvania Transportation Authority,* 736 A.2d 35, 38 n. 3 (Pa. Cmwlth.1999) (concluding that our Supreme Court's holding in *Commonwealth v. Maguigan,* 511 Pa. 112, 125, 511 A.2d 1327, 1334 (1986), establishes that "the party asserting [attorney-client] privilege has the initial burden to prove that it is properly invoked" and only then does the burden shift to "the other party to prove why the applicable privilege would not be violated by the disclosure, e.g., the privilege was waived, an exception to the privilege exists and is applicable, etc."); *Joe v. Prison Health Services, Inc.,* 782 A.2d at 31 (stating that "[t]he party asserting [attorney-client] privilege has the initial burden to prove that it is properly invoked, and the party seeking to overcome the

privilege has the burden to prove an applicable exception to the privilege"). If the party asserting the privilege does not produce sufficient facts to show that the privilege was properly invoked, then the burden never shifts to the other party, and the communication is not protected under attorney-client privilege. *Joyner*, supra at 38 n. 3.[2]

## SUBJECT MATTER WAIVER

¶ 21 Mindful of all the principles discussed above, we turn now to the specific circumstances of the case *sub judice*, addressing first whether the trial court erred in holding that Nationwide had waived attorney-client privilege with respect to the memorandum in dispute, *i.e.,* Document 529, by having produced in discovery two other privileged documents pertaining to the subject of agent defections, *i.e.,* Documents 314 and 395. Nationwide contends that Documents 314 and 395 were *not* protected by attorney-client privilege and therefore, as a matter of law, they could not form the basis for a subject matter waiver of attorney-client privilege with respect to Document 529. After careful analysis of Documents 314 and 395, we agree with Nationwide's contention, for the reasons set forth below.

■ ¶ 22 Document 395 is an e-mail memorandum that is dated June 24, 1999; was authored by Robert M. Leo, Nationwide's director of agency administration; and was sent to 35 Nationwide employees and officers. The subject of the memo is identified in the subject line as "Reflex Action Plan–Defecting Agencies." (Document 395 at 1). "Reflex Action Plan" was Nationwide's term for its uniform, coordinated response to agent defections to other companies. The memo addresses Nationwide's perceived need "to quickly respond to a large defection [of agents] within a short time." (*Id.* at 1). It summarizes additions and changes to the Reflex Action Plan, specifically delineating some of the responsibilities of numerous Nationwide departments and employees. There is no indication from the document itself or from the record that this information was confidential. Furthermore, although a few of the 35 memo recipients were attorneys, there is not the slightest suggestion that the information was being conveyed to the attorneys for the purpose of securing legal services, legal assistance, or a legal opinion. Nationwide asserts that Document 395 is a routine business communication, not protected by attorney-client privilege (Nationwide's Brief at 17), and we agree.

■ ¶ 23 The other relevant document produced in discovery by Nationwide is Document 314, an e-mail memorandum authored by Randall L. Orr, an attorney in Nationwide's office of general counsel. The recipients of Document 314 were seven Nationwide employees, including Mr. Leo, who was the author of Document 395; Nationwide's sales manager and state officer for Pennsylvania; and two attorneys in Nationwide's office of general counsel. The subject of Document 314 is "[Pennsylvania] agent defections," and the memorandum outlines Mr. Orr's understanding of Nationwide's business decision to sever relationships with several agents (Document 314 at 1; Nationwide's Brief at 16). The memorandum, in abbreviated and summary fashion, specifically addresses matters concerning four agents: two who had already left Nationwide and two who were to be confronted and then cancelled. The memorandum expresses the need to obtain as much information as possible

2. We recognize that we are not bound by the holdings of the Commonwealth Court, but we find that Court's articulation of the structure of the attorney-client privilege analysis to be cogent as well as consistent with case law from the Superior Court.

about these four defecting agents, from the agents themselves or through investigation, in order to begin to assess legal options against them and the companies to which they were moving or had moved. It is not at all clear from either the memorandum itself or from the record that Nationwide had provided the information recited in the memorandum to its counsel in confidence for the purpose of obtaining legal advice or a legal opinion. To the contrary, Nationwide asserts that Document 314 does *not* contain any confidential communication, but merely recites Attorney Orr's understanding of business decisions that had been made by Nationwide with respect to termination of the four agents' relationships. (Nationwide's Brief at 16). Thus, Nationwide asserts that Document 314, like Document 395, is a routine business communication, not protected by attorney-client privilege (*Id.* at 17). We agree with Nationwide's characterization.

■ ¶ 24 Based on the above analysis, we accept Nationwide's argument and conclude that neither Document 395 nor Document 314 satisfies the requirements for protection under attorney-client privilege. Therefore, we must also conclude that, since neither of these documents is privileged, neither can form the basis for subject matter waiver of attorney-client privilege with respect to Document 529. As asserted by Nationwide, subject matter waiver of attorney-client privilege cannot be based on the disclosure of non-privileged documents. *See Murray, supra* at 367; *Katz, supra* at 439. Thus, we determine that the trial court erred in holding that Nationwide had waived attorney-client privilege protection with respect to Document 529 as a result of subject matter waiver from Nationwide's prior production of Documents 314 and 395.

## ATTORNEY–CLIENT PRIVILEGE ANALYSIS APPLIED TO DOCUMENT 529

■ ¶ 25 Although we have concluded that the trial court erred in finding subject matter waiver of attorney-client privilege with respect to Document 529, our analysis is not yet complete because we have not considered whether attorney-client privilege does, indeed, apply to Document 529. As we discussed above, the trial court resolved the case on the basis of *waiver* of attorney-client privilege. Therefore, the trial court clearly had concluded that attorney-client privilege applied to Document 529, but the trial court did not present the reasoning that had led to this conclusion. In other words, the trial court conducted the second part of the above-described legal analysis—whether a waiver or exception to attorney-client privilege exists—without explaining its reasoning as to the first part of the analysis—whether the privilege actually covers the document in question. *See supra.* After careful review of Documents 529, 314, and 395; the certified record; and relevant decisional and statutory law, we conclude that Document 529, like Documents 314 and 395, does not satisfy all the requirements for protection under attorney-client privilege and thus must be disclosed.[3]

¶ 26 Document 529 is a memorandum on the subject of "Agent Defections," dated July 29, 1999, and authored by Tom Dietrich, who was a member of Nationwide's general counsel's office. The recipients of the memorandum were the following 15 individuals: Tom Crumrine, who was the president of Nationwide Exclusive Agencies, the department of Nationwide dealing with its agencies nationally; three of the associates in Mr. Crumrine's department; Galen Barnes, the president of Nation-

---

3. We stress that Nationwide has invoked *only* attorney-client privilege as a bar to disclosure of Document 529. Accordingly, we have limited our analysis to attorney-client privilege.

wide; Nationwide's sales managers for Pennsylvania, New York, and Ohio; Nationwide's state officers for the same states and a supervisor; and three attorneys in Nationwide's office of general counsel.[4] Thus, Document 529 is not a communication from a corporate client to counsel, but rather is a communication *from counsel to* a group of managers of a corporate client.

■ ¶ 27 In claiming attorney-client privilege for Document 529, Nationwide neglects to consider that, under this privilege, protection is available *only* for confidential communications made *by the client* to counsel. The very title of the relevant statutory provision specifies what is protected: "Confidential communications *to* attorney." 42 Pa.C.S.A. § 5928 (emphasis added). Communications *from* counsel to a client may be protected under Section 5928, but *only* to the extent that they reveal confidential communications previously made by the client to counsel for the purpose of obtaining legal advice. *See Slusaw*, 861 A.2d at 273; *Birth Center*, 727 A.2d at 1164; *Coregis Insurance Co.*, 186 F.Supp.2d at 569–72.

¶ 28 Document 529, which was written by counsel, does not disclose any confidential communications made by Nationwide, the client, to its counsel. Document 529 stresses Nationwide's need to respond to agent defections and summarizes in a general way the activities from the office of general counsel contributing to Nationwide's overall effort in this regard. The perceived problem of agent defections and Nationwide's response were also addressed in Documents 314 and 395, which Nationwide voluntarily disclosed as non-

privileged business decisions. Documents 314 and 395 make abundantly clear that Nationwide was devising a multi-faceted process to deal with agent defections and that legal claims against the defecting agents and their companies were being considered as an aspect of that process. Document 529 reveals no confidential communication concerning these efforts from Nationwide to its counsel for the purpose of obtaining legal advice or a legal opinion.

■ ¶ 29 In addition to discussing on-going efforts to manage agent defections, Document 529 also outlines, again in general terms, counsel's opinion as to the likely outcome of current and pending litigation. Counsel's general opinion as to what is likely achievable via litigation is protected by attorney-client privilege *only* in so far as necessary to protect from disclosure the *client's confidential communications.* Since Document 529 reveals no confidential facts *communicated by Nationwide* to counsel, it is not protected from disclosure by attorney-client privilege. We stress that because Nationwide has invoked *only* attorney-client privilege to protect Document 529 from disclosure, we have limited our analysis to attorney-client privilege.

■ ¶ 30 In summary, after careful and comprehensive review, we conclude that Document 529 does not satisfy the requirements for protection under attorney-client privilege and is thus discoverable. Therefore, we affirm the order of the trial court, although on different grounds.[5]

¶ 31 Order affirmed.

■

---

4. The subject, date, author, and recipient list of Document No. 595 were apparent even from the redacted version. Recognizing that the document remains confidential at this point, we have taken care to discuss its substantive content in general terms.

5. As an appellate court, we may uphold a decision of the trial court if there is any proper basis for the result reached; thus we are not constrained to affirm on the grounds relied upon by the trial court. *Jones v. Harleysville Mutual Insurance Co.*, 900 A.2d 855,

858 (Pa.Super.2006); *In re Adoption of R.J.S.,* 889 A.2d 92, 98 (Pa.Super.2005).